Mickey PRICE and Hudson Price, Plaintiffs-Appellants,

v.

UNITED STATES of America, Defendant-Appellee.

No. 85–3018.

United States Court of Appeals, Eleventh Circuit.

Nov. 13, 1985.

---

David R. Lewis, Jacksonville, Fla., for plaintiffs-appellants.

John E. Lawlor, III, Asst. U.S. Atty., Jacksonville, Fla., for defendant-appellee.

Before FAY and JOHNSON, Circuit Judges, and HOFFMAN *, District Judge.

JOHNSON, Circuit Judge:

The appeal arises from a decision of the district court granting summary judgment in favor of defendants. The district court granted summary judgment on the grounds that plaintiffs' complaint, arising under the Federal Tort Claims Act ("FTCA"), 28 U.S.C.A. § 2671 *et al.*, was barred by the statute of limitations. This appeal concerns the issue of when the stat-

* Honorable Walter E. Hoffman, U.S. District Judge for the Eastern District of Virginia, sitting by designation.

ute of limitations begins to run in a medical malpractice action under the FTCA.

On September 15, 1980, appellant Mickey Price went to the emergency room of Naval Hospital in Oakland, California, complaining of gynecological problems. Her husband was an officer in the Navy, so Mrs. Price received treatment as a Navy dependent. She was examined by Dr. John C. Schaffer, who diagnosed her as suffering from a uterine disease and an andexal tumor or cyst. That day, a serum pregnancy test was administered; the results of this test were reported as negative. A pelvic ultrasound was also administered, and no evidence of pregnancy was found. Dr. Schaffer then recommended to Mrs. Price that she undergo a complete abdominal hysterectomy.

Dr. Schaffer performed the hysterectomy on September 25, 1980. After the uterus was removed from Mrs. Price, the uterus was found to contain an eight-week old embryo. Within a few days after surgery, Dr. Schaffer informed the Prices that Mrs. Price had been pregnant when the hysterectomy was performed, and that, as a result of the operation, she lost the fetus. The Prices made no attempt to ascertain what had gone wrong until August 1983. Mrs. Price said that she assumed her husband knew what had gone wrong, but that she never asked him about it because it was too upsetting.

In August 1983, the Prices consulted with an attorney about the lost fetus, and he suggested that they try to obtain a copy of the pre-operation pregnancy test result. In reply to the Prices' inquiry, the Navy turned over information indicating that it was likely the result of the pregnancy test had actually been positive. Both parties have subsequently stipulated that the result of this test probably was positive, although the result was erroneously recorded as negative. Immediately after receiving this information from the Navy, the Prices filed a statutory claim with the Navy. The Prices received no response to that claim. In April 1984 they filed the present action against the United States under the FTCA.

The United States filed a motion for summary judgment based on the affirmative defense that the action was barred by the statute of limitations. On December 17, 1984, the district court granted this motion. The Prices filed a timely notice of appeal to this Court.

■ A tort action under the FTCA is "forever barred unless it is presented in writing to the appropriate federal agency within two years after such claim accrues." *Burgess v. United States*, 744 F.2d 771, 773 (11th Cir.1984); 28 U.S.C.A. § 2401(b). The general rule in tort actions under the FTCA is that the two-year statute of limitations period begins to run when the plaintiff is injured. *United States v. Kubrick*, 444 U.S. 111, 120, 100 S.Ct. 352, 358, 62 L.Ed.2d 259 (1979). However, applying this rule in medical malpractice cases would lead to unjust results, for two reasons. First, if the injury takes a long time to manifest itself, the plaintiff might not discover the injury until more than two years after the injurious acts occurred. Second, the plaintiff might not suspect that the injury was caused by a person who treated her, particularly where the plaintiff continues to be treated by the person who caused the injury. Recognizing that the victims of medical malpractice would otherwise be at the mercy of the tortfeasors, the Supreme Court has held that, under the FTCA, the statute of limitations period in medical malpractice actions is tolled until the plaintiff possesses the critical facts of her injury and its cause. *Id.* at 122, 100 S.Ct. at 359.

■ Once the plaintiff discovers that her injury is probably attributable to some act of those who treated her, there is no longer any reason to toll the statute of limitations. At this point, the plaintiff is no longer at the mercy of those who caused the injury. There are others who can advise the plaintiff whether she has a valid legal claim, and she need only ask. *See id.* In holding that a medical malpractice claim does not accrue until the plaintiff discovers the "cause" of her injury, the Court did not hold that the statute of limitations period is tolled until

the plaintiff knows the particular acts that resulted in her injury. The Court held only that the claim does not accrue until the plaintiff knows that her injury is connected to some act of those who treated her. Thus, a medical malpractice claim under the FTCA accrues when the plaintiff is, or in the exercise of reasonable diligence should be, aware of both her injury and its connection with some act of the defendant. See *Lavellee v. Listi*, 611 F.2d 1129 (5th Cir.1980); *Burgess, supra*, 744 F.2d at 773.

■ In the present case, appellant was told within days of her operation in September 1980 that she lost a fetus as the result of the hysterectomy. At that point, appellant became aware of her injury. She also knew that the doctor who performed the hysterectomy relied on information that she was not pregnant, and that this information was incorrect. Although appellant did not know exactly what mistake, or whose mistake, led the doctor to believe that she was not pregnant when in fact she was, she had to know that her injury was probably connected to some act of those responsible for her treatment. If she intended to pursue the matter, there was no reason for her not to seek advice from others as to whether her treatment had been negligent, and whether she should bring a legal claim.

The fact that appellant did not know whether the particular cause of her injury was the failure of the pregnancy test to yield an accurate result, or the failure of a person to record the result of the test accurately, did not toll the statute of limitations period. Upon learning that she lost a fetus, appellant was on notice that there had probably been an act of negligence. Appellant was no longer at the mercy of those who had treated her. The only reason she did not find out the particular cause of her injury is that she did not ask.

Appellants argue that *Waits v. United States*, 611 F.2d 550 (5th Cir.1980), requires this Court to find that their action is not time-barred. In *Waits*, the plaintiff was hospitalized between November 1972 and January 1973 because of hip and leg injuries. During this time, plaintiff's leg became infected. The physicians failed to treat the infection properly and, as a result, the plaintiff eventually lost his leg. In July 1974 the plaintiff sought records concerning the treatment of his infection. The hospital failed to furnish those records until October 15, 1974. The plaintiff first filed a claim for relief in January 1975, more than two years after his release from the hospital.

This Court held that the plaintiff's action was not barred by the statute of limitations. This holding rested on two grounds. First, until he obtained the hospital records concerning his treatment, the plaintiff had no reason to believe that his infection could have easily been treated, or that the doctors were in any way responsible for the loss of his leg. *Id.* at 553. Second, the hospital was at fault for failing to produce the records promptly after the plaintiff requested them. But for this delay, the plaintiff would have filed his claim within two years of his release from the hospital. *Id.*

■ In the present case, appellant knew within days of her operation that there had been some mistake in connection with the pregnancy test, and that those who treated her were probably responsible for her loss of the fetus. Furthermore, the fact that appellant failed to obtain the hospital records concerning the pregnancy test in time to file a timely claim was not the result of any delay by the defendant. Appellant waited three years to request records, and the defendant furnished them promptly. *Waits* requires only that the statute of limitations be tolled where the plaintiff has no reason to know that his injury was connected to some act of the defendant, or where the plaintiff is prevented from filing a timely cause of action because of some action of the defendant. Neither of these rationales is applicable to the present case.

The order of the district court granting summary judgment in favor of the United States is AFFIRMED.

FAY, Circuit Judge, dissenting:

Often the answer to a legal inquiry depends upon how one phrases the question. My understanding of the claim being made here is that the plaintiffs lost the opportunity of considering the postponement of the surgery performed until after the birth of a child they very much desired. Not knowing that Mrs. Price was pregnant, the subject was not raised by Dr. Schaffer or the Prices.

Dr. Schaffer ordered a preoperative pregnancy test. It was reported to him in writing that such was performed and that it was negative. The Prices did not know until August of 1983 that this was not so. It is of no moment that the Navy now admits the test results were probably positive. It was recorded as negative. This was an act of negligence not known or discovered until August 1983.

The majority relies upon the fact that the Prices made no attempt to ascertain what had gone wrong. Nothing had gone wrong. The surgery was performed and Mrs. Price recovered. It seems to me that it is a fact question as to whether or not a reasonable person would think about making inquiry at that point. We could probably take judicial notice that medical tests are not perfect. There is no indication that Dr. Schaffer indicated any surprise to the Prices about Mrs. Price having been pregnant. A pelvic ultrasound was performed and no evidence of pregnancy was found. Why would the Prices have pursued some course of investigation? Surely the law does not require every patient to double check the results of each test performed by a hospital staff.

Only through a fluke did the Prices discover the negligent reporting of the serum pregnancy test. Present counsel has some experience with Naval medical records and made sufficient inquiry to force the service to go behind the written entry of "negative." It is inconceivable to me that anyone in the Navy would have admitted to the Prices that the record was probably wrong regardless of when or how many times they sought information. The record still shows a written entry of "negative." Due to a claim being filed and attorneys becoming involved, the Navy now concedes these records are in error.

Most respectfully, I dissent. I would reverse the summary judgment and allow the fact finder to determine when the Prices knew or should have known that the negligent act of reporting a negative result caused them to lose the opportunity of having a child.